FILED

MAR 3 0 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 03-15744-B-13 |
| George R. Cleaver and Cindy M. Cleaver, | ) ) ) | |
| Debtors. | ) ) | |
| | ) | |
| George R. Cleaver and Cindy M. Cleaver, | ) ) ) | Adversary Proc. No. 08-1123 |
| Plaintiffs, | ) ) | DC No. USA-1 |
| v. | ) ) | |
| United States of America, Department of Housing and Urban Development, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM DECISION REGARDING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This disposition is not appropriate for publication. Although it may cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9ᵗʰ Cir. BAP Rule 8013-1.

Jeffrey J. Lodge, Esq., appeared on behalf of the defendant, United States of America, Department of Housing and Urban Development.

Plaintiff, George R. Cleaver appeared *in propria persona*.

Before the court is a motion for summary judgment (the "Motion") brought by defendant United States of America, Department of Housing and Urban Development ("HUD"). HUD is a secured creditor of the debtors

George and Cindy Cleaver (the "Cleavers") and holds two liens against the Cleavers' home. After the Cleavers completed performance of their chapter 13 plan, and the chapter 13 trustee filed his final report (the "TFR"), the Cleavers brought this adversary proceeding against HUD entitled "Complaint to Enforce Chapter 13 Plan, for Declaratory and Injunctive Relief and Damages and an Accounting."[1] The court held a hearing on the Motion and took the matter under submission. Because the court cannot find that there are any triable issues of material fact, and because HUD has established its right to a judgment on all claims for relief as a matter of law, the Motion will be granted.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523[2] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

/ / /

---

[1] This bankruptcy was filed in June 2003. The Cleavers have completed their chapter 13 plan, the TFR has been filed and approved, and the Cleavers have received their chapter 13 discharge. The Cleavers initially objected to the TFR on the grounds, *inter alia*, that they did not have an accurate accounting from HUD. The court overruled that objection and instructed the Cleavers to file this adversary proceeding. The TFR showed that the prepetition arrearage on the HUD Loan had been paid in full. HUD did not object to the TFR. This case appears to be ready to close once this adversary proceeding is concluded.

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *before* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

2

**Background and Findings of Fact.**

The court has reviewed and considered the entire record in this case, the pleadings and admissible evidence filed in support of and in opposition to the Motion, and the arguments of the parties on both sides. Based on the evidence presented, the following facts appear to be undisputed.

HUD was a secured creditor in the Cleavers' chapter 13 bankruptcy by virtue of a mortgage loan made to the Cleavers in 1982 (the "HUD Loan"). The HUD Loan was documented and secured in two parts; a conventional loan secured by a first deed of trust against the Cleavers' residence (the "Residence") in the original amount of $47,500, and a deferred loan secured by a second deed of trust, also against the Residence.[3]

When the Cleavers filed this bankruptcy in 2003, they had missed approximately five years of payments on the HUD Loan. The Cleavers confirmed a chapter 13 plan (the "Plan") pursuant to which they committed to pay the arrearage on the HUD Loan estimated in the Plan to be $28,000, without interest. HUD did not object to confirmation of the Plan, specifically the portion of the Plan which provided for 0% interest on its arrearage claim. Pursuant to the Plan, the Cleavers were required to make the post-petition mortgage payments according to the terms of the loan documents directly to HUD.

Now that the Cleavers have completed their Plan, there is a dispute with HUD over the balance due on the HUD Loan. In July 2003, HUD filed a proof of claim in the bankruptcy case stating a "payoff amount" of $61,659.19,

_____

[3]The deferred loan does not become due and payable unless and until the Cleavers sell and convey title to their Residence or rent the Residence to a third party for longer than one year. The balance due on the deferred portion of the HUD Loan is not currently in dispute and is not before the court in this adversary proceeding. All references herein to the "HUD Loan" relate only to the conventional portion of the HUD Loan secured by the first trust deed.

including an arrearage of $36,228.57.  Interest accrued on the HUD Loan at
the rate of 8.25% per annum.

       After the Plan was confirmed, the Cleavers objected to HUD's proof of
claim on the grounds, *inter alia*, that the claim included·unauthorized service
charges and inappropriate escrow charges, and failed to properly account for
the payment history[4] (the "Claim Objection").  The Claim Objection included a
list of payments which the Cleavers contend they made on the HUD Loan
from January 1997 to May 1999.  That accounting confirmed that no payments
were made for 57 months between October 1998 and June 2003.

       In response to the Claim Objection, HUD admitted that some of the
statements it had provided to the Cleavers were incorrect.[5]  In May 2004, HUD
filed a response which included a history of the Cleaver's dispute with HUD
and a statement of HUD's position regarding the balance due on the HUD
Loan.  HUD's response included copies of the loan documentation and
correspondence with the Cleavers.  The court held a status conference on the
Claim Objection on October 13, 2004.  At that hearing, the Cleavers' attorney
informed the court that the parties had reached a settlement of the Claim
Objection and the status conference was dropped from calendar.  The parties
never submitted a stipulation to memorialize their agreement, or an order to fix
the balance due and resolve the dispute.  However, HUD did file an amended
proof of claim in November 2004.

       HUD's amended proof of claim included a statement of account dated
October 29, 2004.  It showed a "total payoff amount" as of the petition date in

---

[4]The Claim Objection was filed as an objection to a proof of claim filed by First
Madison Services. Inc.  The proof of claim shows HUD to be the creditor and First Madison
to be the servicing agent.

[5]See Order Setting Contested Matter For Further Status Conference·filed on June 14,
2004.

4

the amount of $76,027.78. This included an unpaid principal balance of $45,671.92 and an arrearage "total to bring current" as of the petition date in the amount of $30,467.92 (the "Amended HUD Claim").[6] The Cleavers did not object to the Amended HUD Claim and proceeded to pay the stated arrearage through the Plan. The Cleavers made all of the payments due under the Plan and the arrearage portion of the HUD Loan was paid in full without interest. The Cleavers also made monthly mortgage payments directly to HUD in the average amount of $408.15. However, HUD contends that those payments were approximately $86 per month less than the amount required to cover the principal, interest, service charges, and the impound account for property taxes.

In February 2008, after the Cleavers completed their Plan payments, their bankruptcy counsel sent a demand to HUD for a beneficiary statement pursuant to Cal.Civ.Code § 2943. HUD did not respond to the demand within 21 days as prescribed in § 2943(b). In April 2008, HUD filed a pleading with the court which stated that the outstanding balance due on the HUD Loan, as of April 15, 2008, was $28,088.33 ("HUD's First Accounting"). Attached to HUD's First Accounting was a payment record showing all payments received from both the Cleavers and the chapter 13 trustee after December 14, 2004. HUD also reported that the Cleavers were current on their post-petition mortgage payments. The Cleavers objected to HUD's First Accounting. HUD reviewed its First Accounting and realized it had mistakenly applied the arrearage payments from the chapter 13 trustee to the principal portion of the HUD Loan, thus grossly understating the balance due.

In June 2008, HUD filed another pleading entitled "HUD's Amended

---

[6] The deferred portion of the HUD Loan was referenced in the Amended HUD Claim, but no amount was stated because the deferred obligation was not yet due and payable.

5

1  Accounting of Chapter 13 Payments" ("HUD's Amended Accounting").

2  HUD's Amended Accounting reported that the balance due on the HUD Loan,

3  after properly crediting all payments received from the chapter 13 trustee, was

4  $41,639.93.  In the Amended Accounting, HUD also asserted a right to collect

5  accrued interest on the arrearage portion of its claim in the amount of

6  $6,872.49, and accrued attorney fees and costs in the amount of $7,613.94.

7  Adding these together, HUD reported a balance due as of January 1, 2008, in

8  the total amount of $56,126.36.[7]

9       The Cleavers responded to HUD's Amended Accounting by filing this

10  adversary proceeding for, *inter alia*, an accounting of the balance due,

11  injunctive relief, and damages.  In the intervening time between the filing of

12  the complaint and the hearing on this Motion, the parties have engaged in the

13  bankruptcy dispute resolution process and HUD has provided a supplemental

14  accounting to the Cleavers.  HUD has also withdrawn its demand for attorney

15  fees and interest on the arrearage claim.  After the dispute resolution process,

16  HUD agreed to, and did, reduce the principal balance due as of January 1,

17  2008, from $41,639.93 to $38,646.63.  (Declaration of Mikel K. Anderson ¶6.)

18  The record is silent as to what additional adjustments HUD made to its

19  Amended Accounting to arrive at the lower number.[8]  Unfortunately, the

20  parties were unable to come to an agreement to fix the amount due on the

21  HUD Loan going forward.[9]

22

23       [7]HUD's Amended Accounting erroneously stated the total to be $55,486.43.

24       [8]The reasons for this reduction are not stated.  It is not clear whether this was the

25  result of further adjustments to HUD's Amended Accounting, or a concession by HUD made
    in an effort to reach a final resolution of the dispute.

26

27       [9]Subsequently the Cleaver's bankruptcy counsel withdrew and the Cleavers are now
    proceeding *pro se.*

28

**Issues Presented.**

The Cleavers allege five claims for relief in the adversary proceeding; (1) for a determination that HUD's demand for attorney fees and interest on the mortgage arrearage paid through the Plan is inconsistent with and violates the Plan and the order confirming the Plan; (2) for a determination that HUD is barred by the Plan from collecting the interest and attorney fees; (3) for an injunction barring HUD from such actions; (4) for an award of damages for violation of Cal.Civ.Code § 2943, based on HUD's failure to timely prepare and deliver a beneficiary statement; and (5) for a final accounting of the balance now due on the HUD Loan. In response to the complaint, HUD brought this Motion for Summary Judgment or Summary Adjudication. HUD asks the court to confirm the outstanding balance due on the HUD Loan. HUD has offered into evidence an amortization table based on its accounting as to the declining balance due each month beginning January 1, 2008, assuming regular mortgage payments are made. (See HUD's exhibit 7.) At the hearing in October 2009, HUD acknowledged that the balance then due on the HUD Loan was actually less than shown in exhibit 7 based on recent payments.[10] HUD contends that there are no disputed issues of material fact as to the accuracy of that accounting.

**Applicable Law.**

**1. Summary Judgment Standard.** Summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[10]The amortization table showed a balance due as of October 1, 2009, in the amount of $37,299.31. HUD represented that the correct balance was $37,013.41 as of October 21, 2009.

matter of law.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages." Fed. R. Civ. P. 56(c), (made applicable in this adversary proceeding by Fed. R. Bankr. P. 7056).

A material fact is one that might affect the outcome of the suit under the governing law and irrelevant or unnecessary factual disputes will not be considered in a motion for summary judgment. *Anderson, et al. v. Liberty Lobby, Inc., et al.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

The moving party bears the burden of showing that there is no genuine dispute as to each issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986).  However, the party adverse to a motion for summary judgment cannot simply deny the pleadings of the movant; the adverse party must designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  More precisely, "[i]t is not enough that the nonmoving party point to disputed facts; rather, they must make a sufficient showing to establish the existence of a triable issue of material fact as to an element essential to the moving party's case." *In re Powerburst Corporation*, 154 B.R. 307, 309-310 (Bankr.E.D.Cal. 1993), citing *Lake Nacimiento Ranch v. San Luis Obispo County*, 830 F.2d 977, 979-980 (9th Cir.1987), cert. denied 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988).

The parties may use summary judgment to dispose of all or any part thereof the opponent's claim or cross claim. Fed.R.Civ.P. 56(a) & (b).  The court may *sua sponte* grant summary judgment in favor of a nonmoving party as long as the moving party was provided a "full and fair opportunity to ventilate the issues in the motion." *United States v. Real Property Located at 25445 via Dona Christa, Valencia California*, 138 F.3d 403, 407, n.4 (9th Cir.

8

1  1998), citing *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir. 1982).

2  The filing of a formal cross-motion is not necessary. *Local 453, International*

3  *Union of Electrical, Radio & Machine Workers, AFL-CIO v. Otis Elevator*

4  *Company,* 314 F.2d 25, 27 (2d Cir. 1963).

5  **Analysis.**

6  **The First Three Claims for Relief.** In their first three claims for

7  relief, the Cleavers seek a determination: (1) that HUD's demand for attorney

8  fees and interest on the arrearage portion of the HUD Loan is inconsistent with

9  and violates the Plan and the order confirming the Plan; (2) that HUD should

10  be barred by the Plan from collecting interest and attorney fees; and (3) for an

11  injunction barring HUD from such violations and collections. At the hearing

12  on this Motion, HUD agreed to withdraw its demand for attorney fees and

13  accrued interest. HUD acknowledged that the arrearage portion of its claim

14  has been paid in full through the Plan. Accordingly, the first three claims for

15  relief appear to be moot and will be dismissed.

16  **The Fifth Claim for Relief.** In the fifth claim for relief, the Cleavers

17  request an accounting of the balance due on the HUD Loan. In support of the

18  Motion, HUD has produced an amortization table (exhibit 7) showing the

19  declining balance due after the regular payments are made each month

20  beginning January 1, 2008. The initial balance in that amortization table is

21  less than the balance reflected in HUD's Amended Accounting filed in

22  November 2008. HUD contends that the numbers on this document are

23  consistent with corrections it has made to the accounting and with negotiations

24  between the parties after commencement of this adversary proceeding. The

25  Cleavers did not object to the admissibility of HUD's accounting. At the

26  hearing on the Motion, HUD's counsel acknowledged that the Cleavers were

27  current in their on-going payments and that the amount due as of October 1,

28

9

2009, was $37,013.41, slightly less than the amount shown for that date in the amortization table based on payments that had been made.  HUD represented that the monthly payment on the conventional portion of the HUD Loan is $396.31 and the escrow payment is $66.74.

The Cleavers dispute HUD's accounting.  They do not specifically contest any of the numbers in HUD's amortization table, but contend that the accounting is incomplete because it does not start from the beginning of the HUD Loan in 1982.  If the Cleavers disagree with HUD's accounting, then they had the burden of producing an accounting of their own to show what they have paid and what they contend is now due.  If they want a more detailed accounting from HUD, then they had a burden to produce evidence to show that HUD's numbers are wrong.  They have not offered any specific information to show how or where HUD's accounting is incorrect.  They have not shown that there are disputed issues of material fact that would require a trial and the production of further evidence in this adversary proceeding.  In response to this Motion, the Cleavers did submit a typed, but unauthenticated list of payments that they contend was made from November 2007 through October 2009, however they do not indicate the significance of the list with regard to HUD's accounting.  The Cleavers also submitted an unauthenticated letter from Jackie Tate, Escrow Administration, C&L Service Corporation, dated January 7, 2009, reflecting an overage in their escrow account, the amount of their estimated annual taxes, and their monthly escrow amount for taxes, but they do not explain the significance of the letter in the context of this Motion.

After listening to the parties in court on multiple occasions, and reviewing the various correspondence and declarations regarding the long and continuous history of this dispute, the court fully appreciates the depth and

10

sincerity of the Cleavers' disappointment with the accounting now offered into evidence by HUD.  But this dispute cries for some finality.  The Cleavers continue to make their mortgage payments to HUD.  Both parties need a final determination of the amounts due on the HUD Loan each month going forward.  HUD has offered into evidence an amortization table that sets forth that information.  The court has nothing else upon which to base its ruling.

**The Fourth Claim for Relief: Cal.Civ.Code § 2943.**  The only remaining issue is the Cleavers' fourth claim for relief.  The Cleavers request damages pursuant to Cal.Civ.Code § 2943(e)(4), which provides for a statutory penalty if a mortgage creditor "willfully" fails to produce a beneficiary statement and payoff demand within 21 days after the receipt of a written demand.[11]  The term "willfully" is defined in § 2943(e)(4) to mean "intentional failure to comply with the requirements of this section without just cause or excuse."

With this Motion, HUD has offered evidence to support its contention that any failure on its part was not "willful" but was the result of difficulties

---

[11]Cal.Civ.Code § 2943(e)(4) states: If a beneficiary for a period of 21 days after receipt of the written demand willfully fails to prepare and deliver the statement, he or she is liable to the entitled person for all damages which he or she may sustain by reason of the refusal and, whether  or not actual damages are sustained, he or she shall forfeit to the entitled person the sum of three hundred dollars ($300).  Each failure to prepare and deliver the statement, occurring at a time when, pursuant to this section, the beneficiary is required to prepare and deliver the statement, creates a separate cause of action, but a judgment awarding an entitled person a forfeiture, or damages and forfeiture, for any failure to prepare and deliver a statement bars recovery of damages and forfeiture for any other failure to prepare and deliver a statement, with respect to the same obligation, in compliance with a demand therefor made within six months before or after the demand as to which the award was made. *For the purposes of this subdivision, "willfully" means an intentional failure to comply with the requirements of this section without just cause or excuse.*  (Emphasis added.)

11

such as changes within the program and computer problems.[12] HUD's evidence, a declaration under penalty of perjury by its chief counsel, states that accounting issues with the Cleavers' payment history (no payments for the five years preceding the bankruptcy), and the fact that HUD required the assistance of their bankruptcy counsel in responding to the demand, caused the delay in HUD's ability to produce the beneficiary statement within the statutory time period. (Declaration of Mikel K. Anderson, p.3, ¶5, filed Sept. 23, 2009.) That evidence supports a finding that HUD did not act "intentionally and without just cause." The Cleavers have not produced any evidence to support a finding otherwise. Accordingly, HUD is entitled to judgment on the damages issue as a matter of law.[13]

**Conclusion.**

Based on the foregoing, the court finds and concludes that there are no triable issues of material fact and that HUD is entitled to judgment on all claims for relief as a matter of law. HUD is entitled to a judgment fixing the balance due on the conventional portion of the HUD Loan secured by the first deed of trust, according to the accounting and amortization table provided by HUD in support of this Motion, as adjusted by HUD's counsel at the hearing. HUD is also entitled to a judgment as a matter of law on the Cleavers' fifth claim for relief for damages. HUD's failure to provide the beneficiary

---

[12]HUD is an agency of the Federal government. HUD also contends that the federal regulations which govern HUD's operations pre-empt the states's Civil Code. The court is not deciding here whether HUD is bound by § 2943. The court is only finding that HUD did not violate § 2943 in a manner that would put that question at issue.

[13]In response to the Motion, the Cleavers also contend that they are entitled to damages for, *inter alia*, (1) the cost of having to file the bankruptcy case; and (2) lost work and time associated with prosecuting their dispute with HUD. Those issues are not pled in the adversary proceeding and are not properly before the court.

1    statement and payoff demand within 21 days was not "willful" within the

2    meaning of Cal.Civ.Code § 2943(e)(4).  The Cleavers' first, second, and third

3    claims for relief are moot and will be dismissed.  HUD shall submit a

4    proposed judgment consistent herewith.  All parties shall bear their own

5    attorney fees and costs for this litigation.

6        Dated: March ___30___ , 2010

7

8

9                                        _____

10                                       W. Richard Lee
                                         United States Bankruptcy Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     13